PICKETT v. MATRY.

SALES—FRAUD—RESCISSION—GOOD WILL.

In a suit for the rescission of a contract for the purchase of a candy business and to recover the amount paid thereon, on the ground of fraud, where the evidence sustains plaintiff's claim that defendant misrepresented the value of the machinery and that plaintiff relied thereon, she is entitled to recover the difference between the value as represented and the value as shown by the evidence, but she is not entitled to recover the amount paid for the good will of the business, which she lost by mismanagement.

Appeal from Oakland; Lamb (Fred S.), J., presiding. Submitted January 10, 1929. (Docket No. 71, Calendar No. 33,751.) Decided June 3, 1929.

Bill by Melvina Pickett against George Matry and others to rescind a contract and to recover the amount paid thereon. From decree dismissing the bill, plaintiff appeals. Reversed, and decree entered.

*John L. Crandell* (*Pelton & McGee*, of counsel), for plaintiff.

*Willis A. Kammann* (*A. L. Moore*, of counsel), for defendants.

McDONALD, J. Charging fraud, the plaintiff filed her bill to rescind a contract and to recover the amount paid thereon for the purchase of the Peninsular Candy Company business in the city of Detroit. The fraud alleged consisted of misrepresentations as to the value of the machinery and equipment and the net profits of the business. It

is charged that the defendant, Matry, represented the value of the machinery to be $4,541.50, whereas it was not worth to exceed $700.00; that he represented the business had been earning $100.00 a week, when, in truth, it had been running at a loss. The consideration was $7,000, of which the plaintiff paid $4,500 in cash in addition to some credits allowed her on the goods, and gave her note for the $2,000 balance secured by a mortgage on two lots. This note has been assigned to the defendant, Amuney, and has not been paid. Mr. Younis was made a party defendant because he claims an interest in the business amounting to $1,500. After the sale, the plaintiff went into possession and conducted the business for about four months. It was not a success. She closed it, declared the contract rescinded, and made a tender to the defendant. He refused the tender, whereupon she began this suit. On the hearing, the trial court found that the charges of fraud had not been sustained by the evidence, and entered a decree dismissing the plaintiff's bill. She has appealed.

We think the evidence sustains the charge that defendant, Matry, misrepresented the value of the machinery. It is undisputed that he made an inventory in which he listed it at a value of $4,541.50. This inventory was attached to the bill of sale and was verified by Mr. Matry. The only evidence submitted at the hearing on the question of value was by the plaintiff's witnesses, who placed it at $700. When the sale was made there were present the plaintiff, her attorney, Mr. Crandell, her daughter, Pauline, and Mr. Matry. All except Matry testified that he represented the value of the machinery to be as stated in the inventory. Mr. Crandell testified:

"He said that the material shown on the inventory cost him more than the total of $4,541.50. I asked

Mr. Matry several times if that was a fair valuation or if it was high, or if it was low, and he said, 'That is a fair price, that is low, that is not high, that is a low price, if anything. That is fair.' * * * I told Mrs. Pickett in Mr. Matry's presence, I thought she should have an appraiser from the wholesale house, and I mentioned the name of E. B. Gallagher & Company, or Bakers & Confectioners' Supply Company. I told her they had a man they would send out who knew the business and knew valuations and she could get an appraisal of it, and I told her that I thought it would be wise to have that done, but Mr. Matry threw up his hands and said he wouldn't wait another day; said, 'I have got to have my answer today, or I am not going to dicker with you any longer.' * * * Mrs. Pickett said she didn't feel like going ahead and closing up the deal without an outside appraisal * * * by a disinterested party, as I had suggested. She asked me, in Mr. Matry's presence, 'Would it be all right for me to go ahead and take Mr. Matry's word for it?' And I said to Mr. Matry, 'You understand that I don't know anything about the valuation of candy fixtures nor equipment, neither does Mrs. Pickett, and neither does her daughter,' and I said, 'if you misrepresent or deceive her today, do you understand you would be liable?' Mr. Matry said, 'I know all about it, I would get myself in all kinds of trouble, I wouldn't misrepresent or lie to you about it at all.' Then I told Mrs. Pickett that inasmuch as Mr. Matry understood she was relying on his representations, he had stated he was an expert and knew the value, that she would be justified under the law in taking his word for it and relying on his representations and assurances.''

Mr. Matry was a witness on the hearing, but made no specific denial of this testimony. When asked for the conversation, he merely said:

"I says, I don't take no inventory, I am selling flat rate seven thousand dollars."

But he did give them an inventory, though he explains that he did so only after Mr. Crandell assured him that they wanted it merely to keep in their records. We have no doubt that the defendant falsely represented the value of the machinery and that the plaintiff relied on his representations.

We are also of the opinion that he represented the net earnings of the business to be $100 a week, but we are not convinced that this representation was false, or that it was relied on by the plaintiff. We agree with the trial court that the failure of the business under the plaintiff's ownership was due to mismanagement.

The plaintiff is entitled to a rescission of the contract, but she ought not to be permitted to recover all that she invested in the business. The total amount of the inventory was $4,975.25. She paid $7,000, or $2,024.75 more than the inventoried price. The $2,024.75 must have been for good will. She lost that by mismanagement. It should not be charged against the defendant. The machinery was represented to be worth $4,195.25. It was in fact worth about $700. Therefore, she lost the difference or $3,495.25 on the machinery, which should be charged to the defendant. Against this sum the defendant is entitled to a credit of $780, which is the inventoried price of finished goods and materials received by her in the sale and used in the business. With this deduction, there is a balance of $2,715.25. But in payment of a part of the consideration the plaintiff gave her note for $2,000. This note is not negotiable. It has been assigned to Matry's brother-in-law, defendant Amuney. As it has not been paid, the amount, $2,000, should be deducted from the

$2,715.25, which would leave a balance of $715.25. Against this balance should be set off the value of a formula for a special grade of candy called "Honepy." The formula for this candy belonged to Mr. Matry, and went to the plaintiff with the business. It is something that cannot be restored to the defendant. The plaintiff's daughter, Pauline, secured in her name the registration of "Honepy" as a trade-mark in the United States patent office. She has the exclusive right to the use of this trade-mark for a period of 20 years. It is concededly valuable, sufficiently so to wipe out the balance which would otherwise be due to the plaintiff for loss on the machinery due to the defendant's misrepresentations. We think that substantial justice will be done between these parties if defendant's property is restored to him and the plaintiff is relieved from the payment of her $2,000 note.

The defendant Younis has no just claim against the plaintiff. If he has any interest in the business, he must look to Mr. Matry.

A decree will be entered providing for the cancellation of the plaintiff's note and a discharge of the mortgage. No further relief is granted. The plaintiff will have costs.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, POTTER, and SHARPE, JJ., concurred.